**This order is SIGNED.**

**Dated: March 22, 2023**



*slo*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>STEVEN & KYLA BARBER,<br><br>Debtors. | Case No. 20-26056<br><br>Chapter 13 |
| LAUREN JOHNSON,<br><br> Plaintiff,<br><br>v.<br><br>STEVEN BARBER,<br><br>Defendant. | Adv. Proc. No. 21-02102<br><br>Hon. Kevin R. Anderson |

**MEMORANDUM DECISION FINDING THAT DIVORCE DEBT IS A NONDISCHARGEABLE DOMESTIC SUPPORT OBLIGATION**

Divorce can be a painful and expensive life event that becomes even more so when divorce debts are at the center of a bankruptcy dispute. In this case, the parties' divorce decree states that "no alimony shall be awarded," but it later states that the allocation of marital debts between the parties was intended to be "in the nature of a domestic support obligation" and "shall be considered

an exception to discharge under 11 U.S.C. § 523(a)(5)."[1] The Debtor stopped making payments on his allocated divorce debts, leaving the Plaintiff liable for these obligations. Plaintiff asserts that the divorce debts are nondischargeable domestic support obligations, and the Debtor asserts they are a dischargeable property settlement.

To resolve whether the parties intended the divorce obligations to be in the nature of support, and then whether the obligations were in substance support, the Court held a trial on January 20, 2023. At the conclusion of the trial, the Court took the matter under advisement. Having carefully considered the parties' arguments, the evidence and testimony presented at trial, and having conducted its own independent research of the relevant case law, the Court issues the following Memorandum Decision finding that the subject debts are a nondischargeable, domestic support obligation under § 523(a)(5).[2]

## I. JURISDICTION, NOTICE, AND VENUE

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and § 157(a) and (b)(2).[3] Plaintiff's complaint objects to the discharge of a particular debt, making this a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I). Venue is appropriately laid in this District under 28 U.S.C. § 1409.

## II. FINDINGS OF FACT

### A. The Prenuptial Agreement.

1. The parties signed a prenuptial agreement in connection with their marriage on July 31, 2016 (the "Prenuptial Agreement").[4]

---

[1] All subsequent references to the United States Code are to Title 11 unless otherwise specified.
[2] This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052.
[3] In the Pretrial Order at ECF No. 27, the parties consented to the Court's jurisdiction to enter a final order.
[4] Ex. 5.

2. The Prenuptial Agreement contains the following statements, provisions, and disclosures:

    a. At the time, "each party was employed and capable of supporting himself/herself."[5]

    b. "[E]ach party hereby now waives and for the future waives his or her right to any and all payments for separate maintenance, alimony and spousal support from the other."[6]

    c. The Debtor's pre-marital assets consisted of a car and a TV with a total value of $2,500 and debts of $300 for then-existing child support.[7]

    d. Plaintiff's pre-marital asset consisted of her home in Heber City, UT with a value of $300,000 and subject to a mortgage of $170,000 (the "Home"). The Debtor was never on title to the Home or liable for the mortgage. Plaintiff also owed $1,050 in credit card debt.[8]

**B. The Divorce Decree and Division of Joint Marital Debts.**

3. The parties separated on June 28, 2017.[9]

4. The parties engaged in a divorce mediation with an attorney that ultimately resulted in a stipulation and settlement agreement that the parties signed around October 25, 2017 (the "Divorce Settlement").[10]

---

[5] *Id.* at ¶ 8.
[6] *Id.*
[7] *Id.* at 11 and 13.
[8] *Id.* at 5 and 12.
[9] Ex. 2 at 17.
[10] Ex. 3.

5. The Utah state court adopted the Divorce Settlement verbatim in its Findings of Fact and Conclusions of Law[11] and in the Decree of Divorce entered on December 29, 2017 ("the Divorce Decree").[12]

6. The Divorce Settlement and Divorce Decree provide for the following, relevant allocation of the parties' marital debts, with each party agreeing to indemnify the other if they failed to pay their assigned debt(s) (collectively the "Divorce Debts"):

| Description of Divorce Debt | Party Responsible for Debt |
|---|---|
| Home equity line of credit secured by Plaintiff's Home (the "HELOC"). | Plaintiff |
| American Express credit card | Debtor |
| Capital One credit card | Debtor |
| Chase credit card | Debtor |
| Citi credit card | Debtor |
| Mountain America CU HELOC credit card | Debtor |
| Mountain America CU credit card | Debtor |

7. The Divorce Decree also provided that "the parties shall assume and pay, and indemnify and hold the other harmless on, these debts as indicated."[13]

8. The parties were jointly liable on the above-listed credit cards for charges made during the marriage (the "Credit Card Debts"). In the divorce, the Debtor assumed responsibility for the Credit Card Debts because he could not by himself afford to pay the HELOC, the Credit Card Debts, and his separate living expenses.

9. At the time of the divorce, the HELOC debt was around $60,000 and the Credit Card Debts totaled between $15,000 to $20,000.

---

[11] Ex. 2.
[12] Ex. 1.
[13] *Id.* at ¶ 19.

10. During the marriage, the parties jointly took out the HELOC to buy a vehicle, to pay off other debts, and to take a vacation.

11. Plaintiff assumed responsibility for the HELOC in the divorce because it was secured by her Home, and without the allocation of the Divorce Debts, she could not afford to pay the mortgage on her Home, the HELOC, the Credit Card Debts, and her other living expenses.

  C.  **The Parties' Financial Situations at the Time of the Divorce.**

12. During their marriage, the parties' joint income was between $63,000 to $70,000 per year.

13. At the time of the parties' separation in June 2017, Plaintiff lost her job at the bank, where she was making approximately $41,600 a year ($20 an hour). In October 2017, she found a new job making approximately $31,200 ($15 an hour).

14. Both during and after the divorce, the Debtor was making between $30,000 to $33,000 per year.

  D.  **The Parties' Post-Divorce Actions.**

15. Plaintiff represents that she has remained current on the HELOC, and there is no evidence to the contrary.

16. Under the Divorce Decree, the Debtor was to reimburse the Plaintiff $5,000 for expenses she had paid for the benefit of the Debtor's child,[14] and the Debtor satisfied this obligation.

17. The Debtor made some payments on the Credit Card Debts, but eventually stopped. As a result, the credit card companies sent Plaintiff notices of default.[15] Plaintiff was ultimately

---

[14] *Id.* at ¶ 20.
[15] Ex. 4.

required to make monthly payments on the Credit Card Debts, and her credit score was negatively affected.[16]

18. In October 2019, Plaintiff filed in the Utah state court a motion for contempt against the Debtor because of his failure to make payments on the Credit Card Debts. The amount owing on the Credit Card Debts at that time was $14,118.50.[17] The parties did not present evidence as to the outcome of this motion.

19. On October 9, 2020, the Debtor filed his Chapter 13 bankruptcy case. On November 1, 2021, Plaintiff filed this adversary proceeding seeking a determination that the Debtor's divorce obligation to pay the Credit Card Debts was a domestic support obligation under § 101(14A) and nondischargeable under § 523(a)(5).

20. The Debtor's Chapter 13 case was dismissed without a discharge on June 15, 2022. But the parties wanted to proceed with the adversary proceeding for a ruling whether the Credit Card Debts were domestic support obligations so that going forward they can make informed decisions as to their financial circumstances.

### III.   ANALYSIS

#### A.   The Legal Standard and Burden of Proof for Determining Whether a Divorce Debt is a Domestic Support Obligation.

In determining the dischargeability of a divorce debt, the Tenth Circuit has established the following standards. First, the determination of a domestic support obligation under the Bankruptcy Code is a question of federal law and not state law.[18] This is because the application

---

[16] *Id.*

[17] *Id.*

[18] *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir. 1993) (citing *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir. 1989)). While *Sampson* was decided before BAPCPA amended the text of § 523(a)(5) to reference the newly defined term of a "domestic support obligation" in § 101(14A), its legal holdings are still applicable to this issue. *See Brown v. Brown (In re Brown)*, Nos. 13-13-10538 JA, 13-1025 J, 2013 WL 5376541,

of federal law to bankruptcy divorce claims "promotes nationwide uniformity of treatment between similarly situated debtors . . . and furthers § 523(a)(5)'s underlying policy favoring enforcement of familial support obligations over a debtor's 'fresh start.'"[19] Second, the determination of a domestic support obligation is a two-step process:

> [W]hether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into both the parties's intent and the substance of the obligation. The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support.[20]

### B.     At the Time of the Divorce, the Parties Intended the Divorce Debts to be Support.

The initial inquiry is whether at the time of their divorce, the parties intended the Divorce Debts to be support.[21] The Tenth Circuit holds that "[a] written agreement between the parties is persuasive evidence of intent. Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control."[22]

In this case, the Divorce Settlement and Divorce Decree clearly establish that the parties intended the Divorce Debts to be nondischargeable, domestic support obligations. Specifically, paragraph 25 of the Divorce Decree uses over 200 words to express and clarify that "it is the intent of the parties to consider [the Divorce Debts] to be in the nature of a domestic support obligation . . . for purposes of interpretation under the Bankruptcy Code."[23] It then states that if a party files

---

2013 Bankr. LEXIS 4030, n.2 (Bankr. D.N.M. Sep. 25, 2013) (finding that after BAPCPA, *Sampson* is still controlling case law in § 523(a)(5) actions) (citations omitted).

[19] *Sampson*, 997 F.2d at 722, (citing *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984)).

[20] *Id.* at 722-23.

[21] *In re Yeates*, 807 F.2d 874, 878 (10th Cir. 1986).

[22] *Id*. (citation omitted).

[23] Ex. 1 at ¶ 25.

for bankruptcy, the Divorce Debts "should be considered an exception to discharge under 11 U.S.C. § 523(a)(5)."[24] This statement in the Divorce Decree conclusively establishes that the parties intended the Divorce Debts to be domestic support obligations.

The Debtor asserts that he was "forced" to sign the Divorce Settlement because the Plaintiff gave him no meaningful choice but to accept its terms. Yet, this was a mediated divorce settlement, and the Debtor admitted that he agreed to these terms because it gave him what he wanted—a termination of his marriage. The Debtor also admitted that he could not have paid both his liability on the HELOC and the Credit Card Debts, and that because Plaintiff agreed to pay the HELOC, he was able to afford his post-divorce living expenses. Plaintiff likewise admitted that she could not afford to pay both the HELOC and the Credit Card Debts, and that it was only through the allocation of the Divorce Debts that she could afford her separate living expenses. Indeed, this is why both parties agreed in the Divorce Settlement that the Divorce Debts were domestic support obligations and were to be treated as such if either party filed for bankruptcy. In short, the Court fails to see any undue inequity or coercion as to the Debtor's agreement to pay the Credit Card

---

[24] *Id*. The complete text of this provision is as follows:

> 25. Non-Dischargeability of Debts/Obligations in Bankruptcy. It is the intent of the parties that the obligations assumed by each in this Agreement, including any and all indemnifications, shall not be dischargeable in any future bankruptcy proceeding. The parties recognize that the support and equitable distribution provisions are interrelated; in the event one party is called upon to make payment on a debt that is the responsibility of the other party, or fails to make payment to the other of an asset, as provided herein, such a circumstance shall be considered a significant change in circumstance, warranting an application for a modification of the support provisions provided for herein, as well as a redistribution of assets and liabilities in order to effectuate the overall intent of this Agreement. As a result of the interrelationship between the support and equitable distribution provisions of this Agreement, it is the intent of the parties to consider the payment of debts and transfer of assets, including indemnifications, to be in the nature of a domestic support obligation (alimony, support, or maintenance) for purpose of interpretation under the Bankruptcy Code, and that if either party files bankruptcy in the future seeking a discharge of any of these debts such debts shall be considered an exception to discharge under 11 U.S.C. §523(5).

Debts. Further, the Court need not consider a party's "post hoc explanation as to his or her state of mind at the time of the [divorce] agreement."[25]

Therefore, the Court finds that the Divorce Settlement and the Divorce Decree contain unambiguous statements by the parties, made at the time of the divorce, that the Divorce Debts were intended to be treated as domestic support obligations under § 101(14A) and to be nondischargeable under § 523(a)(5). The Court further finds that the subsequent and more specific provisions in the Divorce Decree that the Divorce Debts were domestic support obligations supersede the terms of the Prenuptial Agreement.[26] Accordingly, the agreements in the Divorce Settlement and the Divorce Decree satisfy Plaintiff's burden that the parties intended the Divorce Debts be in the nature of support and be treated as domestic support obligations in the event of a bankruptcy filing.

    C.    **The Divorce Debts Were in Substance Support.**

The second prong is whether the Divorce Debts are in substance support based on "the function served by the obligation at the time of the divorce." "[T]he term 'support' as used in § 523(a)(5) is entitled to a broad application."[27] "This [support] may be determined by considering the relative financial circumstances of the parties at the time of the divorce."[28] However, the "parties' subsequent change in circumstances or need does not enter into this second inquiry."[29]

---

[25] *Sampson*, 997 F.2d at 723 (citation omitted).

[26] See *AL-IN Partners, LLC v. LifeVantage Corp.*, 496 P.3d 76, 81 (Utah 2021) (holding that parties may subsequently modify, waive, or agree to new terms to an existing, written contract) (citation omitted)) and *Sweet v. Sweet*, 138 P.3d 63 (Utah Ct. App. 2006) (holding that stipulated divorce decrees are generally treated the same as other arms-length contracts).

[27] *Jones v. Jones (In re Jones)*, 9 F.3d 878, 881 (10th Cir. 1993) (citing to *In re Yeates*, 807 F.2d 874, 878 (10th Cir. 1986)) (holding that a divorce debt could be in the nature of support under federal bankruptcy law, even though it would not qualify as support under state law).

[28] *Sampson*, 997 F.2d 717, 725-26 (citing to *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990)).

[29] *Young v. Young (In re Young)*, 35 F.3d 499, 500 (10th Cir. 1994) (citation omitted).

Also, a debtor's current inability to service a divorce debt is not relevant to its determination as a support obligation for purposes of § 523(a)(5).[30]

While the Tenth Circuit *Goin* case described divorce support payments as long-term payments made directly to an ex-spouse to equalize an imbalance in income that terminates upon remarriage,[31] that description was based on the specific facts of *Goin*. Later, the Tenth Circuit held that "the emphasis [is] placed on the determination of whether a debt is in the nature of support, rather than on the identity of the payee."[32] Therefore, it is not dispositive that the parties were to make payments directly to the Divorce Debt creditors, or that one party's obligation to pay the Divorce Debts did not terminate upon the remarriage of the other party.

In the factually similar case of *Dewey v. Dewey* (*In re Dewey*),[33] the divorce decree obligated the Chapter 13 debtor to pay joint credit card debts. The debtor argued that this divorce obligation could not be in the nature of support because the prior credit card purchases for trips, computer equipment, collectibles, etc., in no way added to the ex-spouse's need for support. The BAP rejected this argument:

> [S]ince the function served by the Debtor's payments of the [credit card debts] was to relieve [the ex-spouse] of any joint obligation on the debts so as to allow her to use her limited income to support herself; it "had the actual effect of providing support to [the ex-spouse]—enabling her to . . . have a monthly income." *Sylvester*, 865 F.2d at 1166 (quotation omitted) (quoted in *Sampson*, 997 F.2d at 726); *see Yeates*, 807 F.2d at 879 ("When the agreement is ambiguous, evidence that payment of the debt is necessary in order for the plaintiff to maintain

---

[30] *Polishuk v. Polishuk*, Case No. 99-CV-901-C(J), 2000 U.S. Dist. LEXIS 19856 *15 (N.D. Okla. Sep. 20, 2000).
[31] *See In re Goin*, 808 F.2d 1391, 1392-93 (10th Cir. 1987) (citation omitted).
[32] *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1490 (10th Cir. 1995) (citing *Jones v. Jones (In re Jones)*, 9 F.3d 878, 881-82 (10th Cir. 1993)). *See also Dewey v. Dewey (In re Dewey)*, 223 B.R. 559, 565 (B.A.P. 10th Cir. 1998) (holding that it was not relevant that the divorce decree required direct payments to the credit card companies).
[33] 223 B.R. 559 (B.A.P. 10th Cir. 1998) aff'd 1999 U.S. App. LEXIS 32509 (10th Cir. Dec. 13, 1999).

daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support.").[34]

Other bankruptcy decisions have likewise found a debt to be a domestic support obligation when a divorced debtor is required to pay joint debts, including credit cards, so the ex-spouse can retain a home or to free up income to pay living expenses.[35]

In this case, Plaintiff testified that she could not make payments on the mortgage, the HELOC, and the Credit Card Debts. Thus, Plaintiff assumed the HELOC so that she could control and afford the payments on her Home to ensure its retention. Indeed, because the Debtor failed to pay the Credit Card Debts, the Plaintiff, as co-obligor, was required to make these payments, which she indicated put at risk her ability to make payments on her Home. Thus, the distribution of the Divorce Debts allowed her to afford and to retain her Home, and it allowed the Debtor to afford his living expenses.

1. The Parties' Financial Positions at the Time of the Divorce.

Turning to the parties' financial positions and Plaintiff's need for support at the time of the divorce, the evidence established the following. The parties incurred the Credit Card Debts and the HELOC during their marriage, and they were jointly liable on these debts. At the time of the divorce, the amount owing on the HELOC was approximately $60,000 and the amount owing on

---

[34] *Dewey,* 223 B.R. at 565-66 (quoting *Sylvester v. Sylvester (In re Sylvester)*, 865 F.2d 1164, 1166 (10th Cir. 1989)). While *Dewey* involved a ruling on the debt's priority status under § 507(a)(7), the BAP applied the Tenth Circuit case law on § 523(a)(5) in affirming the lower court's ruling that the debt was a support obligation. This was because "the language in § 507(a)(7) mirrors that of § 523(a)(5)"; thus, "the definition developed under § 523(a)(5) should have equal effect under § 507(a)(7)" and vice versa. *Id*. at 566. Even though these sections were amended by BAPCPA in 2005 (with § 507(a)(7) becoming § 507(a)(1)), they still mirror each with both sections applying to a "domestic support obligation."

[35] *See Robinson v. Robinson (In re Robinson)*, 921 F.2d 252 (10th Cir. 1990) (holding that a debtor's divorce obligation to pay second mortgage on ex-spouse's home was in the nature of support); *Busch v. Hancock (In re Busch)*, 369 B.R. 614 (B.A.P. 10th Cir. 2007) (same); *Lewis v. Trump (In re Trump)*, 309 B.R. 585, 593-94 (Bankr. D. Kan. 2004) (same); *Polishuk v. Polishuk (In re Polishuk)*, 243 B.R. 408, 419-20 (Bankr. N.D. Okla. 1999) (same but involving divorce obligation to pay credit card debt so ex-spouse could afford living expenses).

the Credit Card Debts was something greater than $14,000. The parties' testimony about their joint income at the time of the marriage was inconsistent, but it appears it was between $63,000 and $70,000 per year. At the time of their separation in June 2017, Plaintiff lost her job at the bank, making $41,600 a year ($20 an hour). In October 2017, she found a new job making approximately $31,200 a year ($15 an hour). During and after the divorce, the Debtor was working for a mobile phone company making around $30,000 to $33,000 a year. Both parties testified that after the divorce, they could not separately afford to pay both the HELOC and the Divorce Debts.

Plaintiff assumed payments on the HELOC because it was secured by her Home, involved a larger loan balance than the Credit Card Debts, and she kept the vehicle purchased with the HELOC proceeds. Plaintiff wanted to ensure that payments were made on the HELOC because a failure to do so could have resulted in a loss of her home. In exchange for Plaintiff's assumption of this larger debt, the Debtor assumed responsibility for the smaller Credit Card Debts.

In summary, without the allocation of the Divorce Debts, neither party had the financial ability to support themselves. With the allocation, each party represented that they could pay their living expenses. Accordingly, the Court finds that the allocation of responsibility for the Divorce Debts was in substance support, which makes the Divorce Debts nondischargeable, domestic support obligations under § 523(a)(5).

    2.    <u>The Debtor's Arguments.</u>

The Debtor cites to *Williams v. Dorn (In re Dorn)*[36] in support of his position that the Divorce Debts are not domestic support obligations. In *Dorn*, a divorce decree required the debtor to pay certain marital debts, including credit card debt, but the bankruptcy court found these were not in the nature of support. On appeal, the district court affirmed based in part on a finding that

---

[36] No. 14-cv-00190-RM, 2016 WL 7155390, 2016 U.S. Dist. LEXIS 170262 (D. Colo. Dec. 8, 2016).

"both parties are in need of support, but, sadly, neither party is in a position to provide the other with such support."[37]

In the present case, both parties needed support, but both were able to provide it by assuming their apportionment of the Divorce Debts. The parties testified that the division of the Divorce Debts allowed them to afford their living expenses. Indeed, after the divorce, the Debtor was able to pay an additional $5,000 divorce debt to Plaintiff as reimbursement for expenses she had paid for the Debtor's son. Further, the Debtor did not file for bankruptcy until three years after the divorce. These facts evidence that the Debtor was in the position to provide support through his assumption of the Credit Card Debts. Likewise, Plaintiff's assumption of the HELOC allowed the Debtor to afford his living expenses. In short, the parties' mutual assumption of marital debts provided the parties with mutual support. These facts distinguish *Dorn*.

The Debtor also argues that the Prenuptial Agreement provided that "each party is capable of supporting him/herself" and that the parties thus waived the "right to any and all payments for separate maintenance, alimony and spousal support." The Court has already ruled that the subsequent and detailed provisions of the Divorce Settlement and Divorce Decree supersede the terms of the Prenuptial Agreement. Certainly, the Debtor could have enforced the Prenuptial Agreement in connection with the divorce negotiations, but instead he agreed to the mediated terms of the Divorce Settlement, and they now control. In the alternative, the Debtor correctly notes that the Divorce Decree itself states "no alimony shall be awarded." However, the definition of a domestic support obligation under § 101(14A) is broader than just alimony; it also includes "maintenance and support" obligations "without regard to whether such debt is expressly so designated." Therefore, the Court finds that the Divorce Decree's statement that no alimony shall

---

[37] *Id.* at *13.

be awarded is not in conflict with the Court's ruling that the allocation of the Divorce Debts were maintenance or support and thus domestic support obligations.

## IV.    Conclusion

For the following reasons, the Court finds that the Divorce Debts are nondischargeable, domestic support obligations. The § 523(a)(5) exception to discharge is intended to favor the enforcement of family support obligations over a debtor's fresh start. As established by the Divorce Settlement and the Divorce Decree, the parties clearly intended the Divorce Debts to be domestic support obligations. While the parties were in relatively equal financial situations, neither one could pay their living expenses without the other's assumption of their share of the Divorce Debts. Thus, the Divorce Debts are in substance support because Plaintiff needed the Debtor to make the payments on the Credit Card Debts so she could afford to retain her home and to pay her other living expenses. Accordingly, the Court concludes that the Divorce Debts are domestic support obligations under § 101(14A), and the Debtor's obligation to pay and indemnify the Plaintiff as to the Credit Card Debts is therefore nondischargeable under § 523(a)(5). The Court will enter an order consistent with this ruling.

**DESIGNATION OF PARTIES TO RECEIVE NOTICE**

Service of the foregoing memorandum decision shall be served to the parties in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Dane L. Hines - budgetbankruptcyutah@gmail.com, hinesdr68395@notify.bestcase.com
- Brian M. Rothschild - brothschild@parsonsbehle.com, ecf@parsonsbehle.com; docket@parsonsbehle.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

   None.